Hugh W. OLDS, Jr., Appellant,

v.

UNITED STATES INFORMATION AGENCY, et al.

UNITED STATES of America, et al.

v.

Hugh W. OLDS, Jr., Appellant.

Nos. 88–5373, 88–5374.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1989.

Decided Feb. 27, 1990.
Rehearing Denied April 30, 1990.

Bruce J. Terris, with whom Monica Wagner, Washington, D.C., was on the brief, for appellant in Nos. 88–5373 and 88–5374.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees in Nos. 88–5373 and 88–5374.

Before WALD, Chief Judge, RUTH B. GINSBURG, Circuit Judge, and FRIEDMAN,* Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge FRIEDMAN.

FRIEDMAN, Senior Circuit Judge:

This case, here on appeal from the United States District Court for the District of Columbia, involves the validity of the terms upon which the United States Information Agency converted the appellant Olds from the Foreign Service Personnel Classification System to the Civil Service General Schedule. Following the conversion, required by the Foreign Service Act of 1980, Olds continued to receive the same salary

---

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

but was no longer eligible to receive within-grade salary increases or cost-of-living increases based on his full salary. Olds contends that because the two latter conditions of his conversion violated the Foreign Service Act, he should have been converted to a higher grade and step. The Foreign Service Grievance Board invalidated the conversion for not providing these two benefits. The district court reversed the Board and upheld the conversion. We affirm the district court.

## I

A. Unlike other employees of the United States government, most employees of the Foreign Service had been part of a separate Foreign Service (FS) personnel system rather than part of the Civil Service General Schedule (GS) personnel system. The Foreign Service system covers personnel in at least five executive departments and agencies, including the Department of State (Department) and the United States Information Agency (USIA).

There are nine grades in the FS schedule, grade 1 being the highest, and grade 9 being the lowest. 22 U.S.C. § 3963 (1988). Within each grade, as in the GS schedule, there are a number of steps, each of which has higher pay than the preceding step. As long as the employee's work is not "[sub]standard" or at "an [un]acceptable level of competence," under both systems he or she customarily will advance in step after serving a certain period in a step. *See* 22 U.S.C. § 3966(a) (1988) (FS employees); 5 U.S.C. § 5335(c) (1988) (GS employees). In contrast to the FS schedule, the regular GS schedule contains grades 1 (lowest) to 18 (highest). *See* 5 U.S.C. § 5104 (1988).

By the late 1970's, the Foreign Service included a substantial number of employees, known as domestic Foreign Service personnel, who served in the United States but were not available for service worldwide. *See* 22 U.S.C. § 4154(a) (1988). In the Foreign Service Act of 1980 (Act or Foreign Service Act), Pub.L. No. 96–465, 94 Stat. 2071, Congress made a number of significant changes in the Foreign Service

personnel system and made that system inapplicable to these domestic Foreign Service employees. 22 U.S.C. § 4154(a). The Act required that any of these domestic employees who did not voluntarily convert to the GS system within three years would be mandatorily converted at that time. *Id.*

Section 2106(a)(1) of the Act provides:

Every individual who is converted under this subchapter shall be converted to the class or grade and pay rate that most closely corresponds to the class or grade and step at which the individual was serving immediately before conversion. No conversion under this subchapter shall cause any individual to incur a reduction in his or her class, grade, or basic rate of salary.

22 U.S.C. § 4156(a)(1) (1988).

Section 2107 of the Act provides that "the Secretary [of State] shall prescribe regulations for the implementation of this subchapter." 22 U.S.C. § 4157 (1988). Section 2108 provides that "[t]he heads of agencies other than the Department of State which utilize the Foreign Service personnel system shall perform functions under this subchapter in accordance with [the] regulations prescribed by the Secretary of State...." 22 U.S.C. § 4158 (1988).

The Secretary of State promulgated detailed regulations, in the form of a circular, which he stated "constitute the regulations authorized by Section 2107 for implementation of the conversion of employees within the Foreign Service and from Foreign Service to Civil Service status." *Foreign Affairs Manual Circular (FAMC) No. 7*, at 2 (Feb. 13, 1981). The circular stated: "Upon conversion from Foreign Service to the General Schedule or the Senior Executive Service (Appendix D), depending on grade level and current position, individuals leaving the Foreign Service will be placed at an appropriate grade and step in accordance with the conversion tables at Appendix B, which meet the statutory requirement in Section 2106(a)(1) of the Act [22 U.S.C. § 4156(a)(1)] that 'No conversion under this chapter shall cause any individu-

al to incur a reduction in his or her class, grade or basic rate of salary.'" *Id.* at 2–3.

Appendix B specified the grade and step in the GS schedule to which each different grade and step in the Foreign Service would be converted. USIA subsequently adopted the same conversion tables for its employees. USIA Circular, *Conversion of USIA Bargaining Unit Domestic Special-ists ("FAS") Under Foreign Service Appointments to the General Schedule or the Senior Executive Service as a Result of the Foreign Service Act of 1980,* app. B (undated). The portion of the USIA table covering employees in Foreign Service grade 2 (FS–2), in which the appellant Olds was at the time of his conversion, was as follows:

| Current Class & Step | Current Salary | GS Grade and Step After Conversion | |
|---|---|---|---|
| FS–2/1 | $40,719 | GS–13/5 | $40,972 |
| FS–2/2 | 41,941 | GS–13/6 | 42,177 |
| FS–2/3 | 43,199 | GS–13/7 | 43,382 |
| FS–2/4 | 44,495 | GS–13/8 | 44,587 |
| FS–2/5 | 45,830 | GS–13/10 | 46,997 |
| FS–2/6 | 47,204 | GS–13/00 | 47,204 |
| FS–2/7 | 48,621 | GS–13/00 | 48,621 |
| FS–2/8 | 50,079 | GS–13/00 | 50,079 |
| FS–2/9 | 51,582 | GS–13/00 | 51,582 |
| FS–2/10 | 53,129 | GS–13/00 | 53,129 |
| FS–2/11 | 54,723 | GS–13/00 | 54,723 |

USIA Circular, app. B, at 3.

Because the amounts of the within-grade increases in the FS schedule were greater than those in the GS schedule, and because the Foreign Service schedule had a larger number of within-grade steps, the salary of some of the FS employees at the time of conversion was higher than the top step of the GS schedule. *Compare* FS–2, step 6 ($47,204) to FS–2, step 11 ($54,723) *with* GS–13, step 10 ($46,997).

The steps shown in the above table as step 00 are artificial steps and do not exist in the General Schedule. *See, e.g.,* Exec. Order No. 12,663, 54 Fed.Reg. 791 (1989), *reprinted in* 5 U.S.C. § 5332, note at 717–18 (1988). The Secretary created them to implement the requirement in section 2106(a)(1) of the Foreign Service Act that no conversion "shall cause any individual to incur a reduction in his or her ... basic rate of salary." *See FAMC No. 7,* at 2–3. This fictional step 00 in the GS schedule is known as the "full save" provision. *Id.* at B–4; USIA Circular, app. B, at 4.

Throughout the conversion tables, all the steps in a single FS grade were converted to a single GS grade. In the portion quoted above, all FS–2 grades were converted to GS–13 grades. Similarly, all FS–4 positions were converted to grade GS–11, all FS–3 positions were converted to grade GS–12, and all FS–1 positions were converted to GS–15. No FS positions were converted to grades GS–10 or GS–14. *See FAMC No. 7,* at B1–B4; USIA Circular, app. B.

B. Olds, an employee of USIA in the Foreign Service who did not make himself available for worldwide service, was mandatorily converted to the GS schedule in 1984. At the time of conversion, his classification was FS–2, step 10. Pursuant to the table he was converted to GS–13, step 00, at the same salary he was receiving as an FS–2, step 10 employee, $53,129.

Since the salary of the GS–13, step 00, position to which he was converted was higher than the top step of grade GS–13, after the conversion Olds was no longer eligible to receive any more within-grade increases, although he would have been eligible to receive up to four more if he had remained in his FS–2, step 10, position in

the Foreign Service. Moreover, USIA calculates his cost-of-living increases (known as comparability increases) as a percentage of the salary for the top step of GS–13 (step 10), $46,997, rather than as a percentage of the higher salary of $53,129 Olds receives as a GS–13, step 00.

After his conversion, Olds filed a grievance with USIA contending that he should have been converted to grade GS–15, step 3, the salary of which was $53,602. He argued that his conversion to the latter grade and step was necessary to enable him to receive the within-grade increases and the full comparability increases he would have received if he had remained in the Foreign Service. According to Olds, under the Foreign Service Act he was entitled to receive the latter benefits following his conversion.

USIA denied the grievance. In a lengthy letter to Olds from the Chief of the Labor Relations Staff, the agency rejected Olds' claim to

> entitlement to future prospective benefits, including within-grade increases and full comparability increases. We find that there is neither implied nor specific language in the act to support your claim in this regard. At the time of conversion, the employee is protected against actual *loss* of pay, not potential pay (i.e. future prospective benefits). The entitlement is only to those benefits associated with the grade of his or her position immediately prior to conversion, but for the future becomes subject to the pay setting rules of Part 531 of Title 5, Code of Federal Regulations.

Letter from Allan H. Meyers, Chief, Labor Relations Staff, USIA, to Hugh W. Olds, Jr. at 7 (Jan. 28, 1986) (emphasis in original) [hereinafter USIA Letter].

The agency further stated that in the development of the conversion tables,

> numerous principles and considerations were incorporated. To determine the appropriate Civil Service grade, job classification principles were utilized. The generic level of work of each Foreign Service class was evaluated against Civil Service classification standards and

matched to the corresponding Civil Service grade. Under this procedure, all individuals in the same Foreign Service class were initially converted to the same General Schedule grade. To do otherwise would deny the validity of the Foreign Service rank and classification system and unduly reward seniority, tenure and differences in step advancement, thus ignoring the merit based principles of selection and promotion that governed the career progression and rank attainment of the converted employee.

USIA Letter, at 5.

C. Olds then filed with the Foreign Service Grievance Board (Board) a grievance, making the same challenges to his conversion he made to USIA. *See* 22 U.S.C. § 4131–4140 (1988). The Board upheld the grievance. It indicated that the conversion tables were not "consistent with relevant provisions of the Act." *In re Olds & USIA*, R.O.P. No. G–85–078–USIA–6, slip op. at 8 (For.Serv.Griev.Bd. Mar. 5, 1987). It stated that in a prior case (*Ehrman*) it had concluded that in the Foreign Service Act "Congress intended that the 'legitimate expectations' of such involuntary convertees not be altered." *Id.* at 10 (discussing *In re Ehrman & Dep't of State*, R.O.P. No. G–84–007–State–4 (For.Serv.Griev.Bd. Nov. 20, 1984) (Excise No. G–007–4)). The Board held that

> at the time of grievant's conversion, he had a legitimate expectation of receiving four more step increases and full pay comparability for his rank and that those expectations were altered by his being converted to a GS–13 "00." That action permits no further step increases so long as grievant remains in that grade and only a reduced basis for computing pay comparability. He should be put in a position where he will have the same expectation of receiving those benefits as he had prior to his conversion.

*Olds & USIA*, slip op. at 11.

The Board, however, declined to order that Olds be reclassified to grade GS–15, step 3. Instead, it followed the procedure it had utilized in the *Ehrman* case. There, after the Board had held that a State De-

partment employee should have been converted to a higher grade (not authorized in the conversion table) than she had received, the State Department suggested that the employee be retained at the lower grade but be given the same within-grade and comparability increases she would have received had she remained in the Foreign Service. The Board and the grievant accepted the suggestion. In the present case, the Board therefore directed USIA to retain Olds in grade GS–13, step 00, but (2) to pay him the rate of pay from his former Foreign Service class of FS–2, step 10, as adjusted by pay comparability increases and step increases since the date of his conversion, and (3) to continue to adjust his salary for pay comparability increases and step increases under the Foreign Service waiting periods until grievant reaches the maximum rate payable in his former Foreign Service grade of FS–2, or until he leaves his current Civil Service position through his own initiative.

*Id.* at 13.

D. Pursuant to 22 U.S.C. § 4140 (1988), both Olds and USIA sought judicial review of the Board's decision in the district court. Olds contended he should have been converted to grade GS–15, step 3; alternatively, he asked the court to enforce the Board's decision. The USIA challenged the Board's decision as arbitrary, capricious, and contrary to law.

The district court denied Olds the relief he sought, vacated the Board's decision and dismissed the complaint. *Olds v. USIA,* Nos. 87–3138 & 87–3140 (D.D.C. Oct. 12, 1988). The court held that the Board's decision was erroneous "because it circumvents the regulations the Secretary of State prescribed for implementing the Act." *Id.* at 7. The court further held:

The plain language of the statute does not support the Board's construction of the statute as encompassing [with]ingrade promotions and comparability pay increases once the transition period is over. The statutory provision at issue only applies to an individual's "basic rate of salary" during the transition period.

Nowhere does plaintiff claim that his "basic rate of salary" was reduced during the conversion process. Accordingly, this statutory provision does not support plaintiff's claim for relief.

*Id.* at 6–7 (footnote and citations omitted).

II

As noted, Olds contends that his conversion from FS–2, step 10, to GS–13, step 00, violated section 2106(a)(1) of the Foreign Service Act, 22 U.S.C. § 4156(a)(1), because in his new GS grade he would not be eligible to receive (1) the additional within-grade increases and (2) comparability increases similar to those he would have received had he remained in the Foreign Service, *i.e.,* based on his actual salary. He seeks reclassification to grade GS–15, step 3, as necessary to rectify the alleged error.

We agree with the district court, however, that the statutory provisions upon which Olds relies did not entitle him to be converted to a GS grade and step that would continue the within-grade increases and the same measure of comparability increases he would have received under his Foreign Service classification, and that the contrary ruling of the Board was erroneous and contrary to law.

Section 2106(a)(1) required that a mandatorily converted Foreign Service employee be converted "to the class or grade and pay rate that most closely corresponds" to his Foreign Service "class or grade and step," and provided that no converted individual would "incur a reduction in his or her class, grade, or basic rate of salary." This provision contains two requirements designed to protect the converted Foreign Service employee: (A) that he be placed in the Civil Service grade that "most closely corresponds" to his Foreign Service class, and (B) that his "pay rate" also "most closely corresponds" to the pay rate of his Foreign Service "class ... and step," and that in the conversion the employee not incur a "reduction in ... basic rate of salary." The first requirement relates to the level of the GS position to which the employee is

converted, and the second relates to the salary of that position.

In implementing these statutory requirements, as the statute required him to do, the Secretary's conversion tables properly accomplished these two requirements.

A. Although Circular No. 7 did not explicitly state that the conversion levels from FS grade to GS grade were designed to place the Foreign Service employees at a GS grade for a position of similar responsibilities and duties to the FS grade, that is the clear import of what the Secretary said and the way the conversion tables were structured.

Paragraph 5a of the Circular states that section 2106(c) of the Foreign Service Act "provides that Civil Service appointments for those converted from the Foreign Service shall parallel their current status as closely as possible." *FAMC No. 7*, at 7. Paragraph 5c states that "no employee will convert at a grade ... which is not equivalent to the employee's current grade...." *Id.* at 9. The same paragraph also states: "Positions occupied by convertees to the Civil Service will be classified at the level appropriate to the individual's Civil Service rank...." *Id.* at 10.

Similarly, in promulgating its own conversion tables, USIA stated that Foreign Service employees would "be converted to the GS grade and step most comparable to their current FS salary and class," USIA Circular, § 5b, at 4, and that "[t]he position occupied at the time of conversion will assume a grade equivalent to the personal Foreign Service rank of the convertee...." *Id.*, § 6d, at 9.

In light of these statements, the fact that all grade FS–2 positions were converted to grade GS–13, and none to grade GS–14 or GS–15, even though the salary levels of the latter positions were closer to the higher steps of FS–2 than the top steps of grade GS–13, indicates the Secretary's determination that the type of work and level of responsibility of an FS–2 Foreign Service employee was comparable to that of a GS–13 employee. In the language of section 2106(a)(1), GS–13 was the grade "that most

closely corresponds" with the FS–2 grade in the Foreign Service system.

This conclusion is further supported by the explanation in the USIA decision denying Olds' grievance, set forth in point I above, of the basis upon which the conversion tables were developed. As there stated: "To determine the appropriate Civil Service grade, job classification principles were utilized. The generic level of work of each Foreign Service class was evaluated against Civil Service classification standards and matched to the corresponding Civil Service grade. Under this procedure, all individuals in the same Foreign Service class were initially converted to the same General Schedule grade." USIA Letter, at 5.

Olds does not contend that grade GS–15, step 3, was the proper grade to which he should be reclassified because its duties and responsibilities "most closely correspond" to those of his FS–2, step 10, position. His sole contention is that reclassification to grade GS–15, step 3, is necessary to enable him to receive the within-grade and comparability increases he claims he is entitled to.

B. The application of the conversion table to place Olds in GS–13, step 00, also satisfied the statutory requirement that his conversion be at the "pay rate" that "most closely corresponds" to the class or grade and step at which he was serving before conversion. The "pay rate" that Olds received as a GS–13, step 00, did not merely "most closely correspond" with his prior FS–2, step 10, salary—it was identical. Admittedly, the step 00 was fictitious, there being no such step in the regular GS classification. Nevertheless, it was an appropriate construct designed to insure that conversion to what the Secretary determined to be the proper GS grade was consistent with the statutory requirement that no conversion "cause any individual to incur a reduction in ... basic rate of salary." 22 U.S.C. § 4156(a)(1).

We agree with the district court that section 2106(a)(1) did not entitle Olds to

conversion to a grade and step (GS–15, step 3) that would preserve not only his prior salary in the Foreign Service, but also the within-grade step increases and the same measure of comparability increases he would have received had he continued in the Foreign Service. The statute refers to "pay rate" not "compensation," and the term "pay rate" is given meaning by the next sentence protecting a converted Foreign Service employee against a "reduction in . . . basic rate of salary." This language covers and protects against diminution of only the salary that the Foreign Service employee was receiving, and not possible future increases in that salary that the employee would have received had he remained in the Foreign Service.

The Secretary's duty and authority to "prescribe regulations for the implementation of" the conversion process, 22 U.S.C. § 4157, gave him considerable discretion to determine the basis upon which the conversion should be accomplished. In exercising that discretion, the Secretary had to consider, balance, and accommodate the two statutory elements of insuring (1) that Foreign Service employees were converted to a GS grade and step that was commensurate with their duties and responsibilities and (2) that the conversion to that step and grade did not subject them to reduction in "basic rate of salary."

The Secretary did not abuse his discretion or violate the Act in adopting conversion tables that did not assure all Foreign Service employees the within-grade step increases and measure of comparability increases they would have received in the Foreign Service. The Secretary had to prescribe regulations for the conversion of a large number of Foreign Service employees in the different departments and agencies—in USIA itself 600 were mandatorily converted—and the conversion tables he adopted were a reasonable method of implementing the statutory directives and requirements.

Olds asserts that the legislative history of the Foreign Service Act supports his position. He refers to statements in the House and Senate Committee Reports that section 2106(a) was intended to preserve "the status and benefits that members of the Service enjoyed prior to conversion," and to "preserve the rights and benefits of employees subject to conversion." H.R. REP. No. 992, 96th Cong., 2d Sess. 100 (1980); S. REP. No. 913, 96th Cong., 2d Sess. 96 (1980), *reprinted in* 1980 U.S. CODE CONG. & ADMIN.NEWS 4419, 4514. These general statements, however, do not establish that the Secretary's reading of the statute, which the district court approved, was erroneous.

Olds also argues that because the Board's interpretation of the statute was reasonable and consistent with the statute, we should defer to that interpretation. He relies upon *United States v. Paddack*, 825 F.2d 504 (D.C.Cir.1987), where we deferred to the Board's interpretation of a State Department travel regulation and refused to make our own *de novo* interpretation, as the district court there had done. In *Paddack*, however, we found no true conflict between the drafter of the regulations, *i.e.*, the State Department, and the Board. Confining our decision to the particular circumstances of *Paddack* itself, we commented that the drafter of regulations normally merits deference and observed that we had sometimes deferred to an agency drafter in preference to an adjudicatory board when the two clashed. *Id.* at 825. Nothing in *Paddack* is inconsistent with our conclusion here that deference properly should be given to the interpretation of the Secretary, as the official Congress charged with implementation of the conversion process, rather than to that of the Board.

### III

Since we hold that Olds' conversion to GS–13, step 00, did not violate the Foreign Service Act, it is unnecessary to consider the government's alternative ground for affirming the district court judgment, namely, that the Board lacked jurisdiction to consider Olds' grievance.

The judgment of the district court is *Affirmed.*